**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEORGE BERNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HEALTH VIEW SERVICES, INC. and | ) | |
| RON MASTROGIOVANNI, | ) | **ELECTRONICALLY FILED** |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff George Bernard ("Bernard"), by and through his undersigned counsel, brings this action against Defendants Health View Services ("HVS") and Ron Mastrogiovanni ("Mastrogiovanni") (together, "Defendants"), and alleges as follows.

**PRELIMINARY STATEMENT**

1. This is an action to recover unpaid wages, unpaid overtime compensation, unpaid contractually-agreed compensation, unpaid unreimbursed business expenses, liquidated damages, attorneys' fees, and costs. For years, Bernard, who was employed by Healthview Asset Management, Inc. ("HVAM"), a wholly owned subsidiary of HVS, and served as HVAM's President, Chief Executive Officer, Chief Investment Officer and Chief Compliance Officer of HVAM.

2. In that role, and through the expenditure of significant efforts, Bernard generated revenue that funded HVS. Yet, despite numerous and repeated requests by Bernard, Defendants have not paid Bernard wages or other compensation they agreed to pay, and never notified him in writing of his rate of pay.

3. Bernard brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. §

333.101 et seq.; and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 et seq.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over Bernard's FLSA claims pursuant to 28 U.S.C. § 1331, because those claims arise under the laws of the United States, and pursuant to 29 U.S.C. § 216(b), which authorizes an employee to maintain an action for unpaid minimum wages and overtime compensation in any federal or state court of competent jurisdiction.

5. This Court has supplemental jurisdiction over Bernard's PMWA and WPCL claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Bernard's claims, including the performance of his work and the failure to pay him, occurred in Allegheny County, Pennsylvania, which is situated within this District. HVAM, for which Bernard performed services as its President, maintains its office at 219 N. Main Street, Pittsburgh, Pennsylvania 15215.

7. Because the claims arose in, and one or more parties reside in, Allegheny County, this action is properly assigned to the Pittsburgh docket of this Court under Local Civil Rule 3.

## PARTIES

8. Plaintiff George Bernard is an adult individual and, at all relevant times, was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), the PMWA, 43 P.S. § 333.103, and the WPCL, 43 P.S. § 260.2a.

9. Defendant HVS is a company that, at all relevant times, owned one hundred percent (100%) of HVAM and directed its affairs.

10. HVS was Bernard's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d); the PMWA, 43 P.S. § 333.103(g); and the WPCL, 43 P.S. § 260.2a.

11. HVS also jointly employed Bernard together with HVAM and was, at all relevant times, Bernard's joint employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the PMWA, 43 P.S. § 333.103(g), and the WPCL, 43 P.S. § 260.2a.

12. HVS shared and co-determined the essential terms and conditions of Bernard's employment and substantially controlled the terms and conditions of employment at HVAM on a regular basis.

13. Defendant Ron Mastrogiovanni is the President of HVS.

14. At all relevant times, Mastrogiovanni exercised operational control over HVS and HVAM, including control over their financial affairs and compensation practices, and was personally responsible for the decision whether and how to compensate Bernard. Mastrogiovanni is therefore individually an "employer" within the meaning of the FLSA, the PMWA, and the WPCL, and is jointly and severally liable with HVS for the violations alleged herein.

## FACTUAL ALLEGATIONS

15. HVS acquired HVAM in 2017, at which time Bernard signed a Non-Disclosure Non-Compete Agreement with HVS.

16. From in or about 2017 until his resignation in or about 2026, Bernard was employed by Defendants and personally ran the day-to-day operations of HVAM.

17. Bernard held the titles of President, Chief Executive Officer, Chief Investment Officer and Chief Compliance Officer of HVAM, and a Director of HVS.

18. Regulatory filings identified HVAM as his "current employer" and listed his title as Managing Director.

19. Bernard's work was integral to Defendants' business.

20. HVAM, which was operated by Bernard, and through Bernard's substantial efforts, generated revenue that funded HVS.

21. Bernard supervised other personnel in the operation of HVAM, including Doug Woods.

22. Bernard performed his duties subject to Defendants' control and consistent with the functions of an employee.

23. In particular, Bernard operated the business, exercised authority over its accounts and submitted his business expenses monthly to HVS's Chief Financial Officer, Sandy O'Donnell.

24. Bernard routinely would pay for expenses incurred by HVAM out of his own pocket.

25. Bernard maintained a record of these expenses and would submit them, with supporting documentation, to O'Donnell, who would record them as a debt.

26. Further, agents of HVS regularly requested that Bernard disburse money from HVAM to HVS to cover HVS's payroll and other expenses, including without limitation, payroll for HVAM.

27. Defendants likewise exercised discretion over paying Bernard for the services he rendered to, and expenses he personally incurred on behalf of, HVAM.

28. For example, on or about August 10, 2026, Mastrogiovanni, as President of HVS, advised Bernard that HVS would convene a board meeting to address, among other things, Bernard's request to withdraw $25,000 from the HVAM bank account.

29. In another example, in or around 2020-2021, Defendants authorized a one-time payment to Bernard for his services out of funds received by Defendants through the Paycheck Protection Program ("PPP"), a U.S. federal government loan program created in 2020 by the CARES Act to help small businesses keep workers employed during the COVID-19 pandemic.

30. HVS jointly employed Bernard and, on a regular basis, exercised substantial control over the terms and conditions of Bernard's employment and of employment at HVAM.

31. HVS possessed and exercised the authority to hire and terminate personnel who worked in the operation of HVAM. For example, by email dated September 4, 2026, HVS purported to strip Bernard of his authority as President of HVAM and to install Doug Woods as his replacement.

32. HVS set, approved and controlled the compensation, rates and methods of payment, and other conditions of employment of personnel who worked in the operation of HVAM, including determining whether, when, and in what amounts they would be paid.

33. HVS supervised and directed the day-to-day operation of HVAM. Bernard performed his duties subject to HVS's direction and control, and HVS required its own

approval for routine operational and financial decisions concerning HVAM, including the disbursement of funds from HVAM's bank accounts, as alleged above.

34. HVS controlled HVAM's books, bank accounts, and payroll and wage records. HVS's Chief Financial Officer, Sandy O'Donnell, received, recorded and maintained the records of wages paid and expenses incurred in the operation of HVAM.

35. HVS controlled the payment of wages to HVAM's employees. HVS directed the disbursement of funds from HVAM's accounts to fund payroll, including HVAM's own payroll, and determined whether and when HVAM's personnel, including those to whom HVAM issued Forms W-2, would be paid.

36. By reason of the foregoing, HVS shared and co-determined the essential terms and conditions of Bernard's employment and was, together with HVAM, Bernard's joint employer under the FLSA, the PMWA, and the WPCL.

37. Notwithstanding any ownership interest Bernard may have held, under the economic reality of the relationship, Bernard was Defendants' employee.

38. Specifically, Bernard performed services for Defendants, under their control, in the operation of a business they owned and directed.

39. HVAM functioned as an operating entity that engaged and paid personnel as employees. For example, HVAM issued a Form W-2 for tax year 2020 to Woods and Bernard's spouse, reflecting both individuals' status as employees of HVS and HVAM, respectively.

40. Although HVAM issued Forms W-2 to other personnel who worked for the business, Defendants never issued Bernard, who was also an employee, a Form W-2, a Form 1099, pay statement, or any other record of wages, and paid him no wages at all.

41. Further, when Bernard resigned his employment on September 4, 2026, Defendants immediately sent Bernard an email, dated September 4, 2026 at 3:50 PM entitled "Termination," the purported effect of which was to acknowledge Bernard's resignation as President of HVAM, to acknowledge Woods as Bernard's replacement as President of HVAM and to "prevent [Bernard] immediately from exercising any authority on behalf of the Company."

42. That email also invited Bernard to contact Defendants to "discuss [Bernard's] claims for reimbursement" as well as expressed an intent to "provide for what is legitimately due to [Bernard]."

**DEFENDANTS' AGREEMENT TO COMPENSATE BERNARD**

43. Defendants agreed to compensate Bernard for his services operating HVAM at a rate of twenty-five thousand dollars ($25,000) per quarter.

44. Defendants never reduced Bernard's rate of pay to writing and never notified him in writing of his rate of pay, the time and place of payment, or any fringe benefits.

45. Further, Defendants agreed to reimburse Bernard for business expenses he incurred personally on HVAM's behalf.

46. HVAM's own December 31, 2025 balance sheet reflected a "due to stockholder" line item of $114,776, which corresponds to unreimbursed business expenses owed to Bernard as of that time, which amount has since been reduced to $75,000, as stated below.

47. Bernard has itemized the business expenses he personally paid on the entities' behalf for which Defendants have not reimbursed him completely.

48. Indeed, Defendant Mastrogiovanni explicitly vetoed some of Bernard's requests to be reimbursed for expenses he incurred on HVAM's behalf on the grounds that it allegedly would render HVS unable to pay its expenses.

49. Based on the foregoing, Defendants owe Bernard not less than $430,000 in unpaid compensation, in addition to $75,000, which is the current balance of unreimbursed business expenses due to Bernard.

50. Despite Bernard's multiple years of service, Defendants paid him no salary.

**HOURS WORKED AND NON-PAYMENT**

51. Throughout his employment, Bernard regularly worked approximately fifty (50) hours per week in the operation of HVAM.

52. By way of example, in each full workweek during the limitations period, including the workweek of Monday through Friday, Bernard worked approximately fifty (50) hours, approximately ten (10) of which were in excess of forty (40), and received no compensation whatsoever for any of those hours.

53. Defendants did not pay Bernard the minimum $684 weekly salary required for the executive, administrative and/or professional exemptions to the FLSA's overtime requirement.

54. Defendants did not pay Bernard at least the applicable minimum wage for the hours he worked, and did not pay him one and one-half times his regular rate for the hours he worked in excess of forty (40) in a workweek.

55. Defendants failed to keep and furnish true and accurate records of the hours Bernard worked and the wages paid to him, as required by law.

56. Defendants' failure to pay Bernard was willful. Defendants knew, or acted in reckless disregard of whether, their conduct violated the wage laws, and made no good-faith effort to determine or satisfy their obligations.

57. Throughout 2026, Bernard repeatedly demanded that Defendants pay the wages and expense reimbursements they owed him.

58. At no time did Defendants dispute that the amounts were owed.

59. In or about July 2026, in response to Bernard's demands for payment, Mastrogiovanni proposed that Bernard accept equity in lieu of the cash Defendants owed.

60. Bernard declined, and Defendants nonetheless failed to pay him the amounts due.

**COUNT I**
**FLSA: Failure to Pay Minimum Wage (29 U.S.C. § 206)**
**(Against All Defendants)**

61. Bernard incorporates the preceding paragraphs as though fully set forth herein.

62. At all relevant times, Defendants were employers and Bernard was their employee within the meaning of the FLSA.

63. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," and employment is determined by "economic reality rather than technical concepts."

64. The FLSA requires an employer to pay each non-exempt employee at least the federal minimum wage for all hours worked, 29 U.S.C. § 206.

65. Defendants failed to pay Bernard the minimum $684 weekly salary required for the executive, administrative and/or professional exemptions to the FLSA's overtime requirement.

66. Bernard was, therefore, not an exempt employee under the FLSA.

67. Defendants failed to pay Bernard the minimum wage required by 29 U.S.C. § 206 for the hours he worked.

68. Mastrogiovanni, as a corporate officer with operational control who was personally responsible for deciding whether and how Bernard would be paid, is an "employer" jointly and severally liable for the violation.

69. A corporate officer, manager, supervisor, or participating shareholder is subject to FLSA liability where he is responsible in whole or in part for the violation and exerted sufficient control over significant aspects of the employer's employment policies.

70. Defendants' violation was willful within the meaning of 29 U.S.C. § 255(a), extending the limitations period to three years.

71. As a result, Bernard is entitled to recover his unpaid wages, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FLSA: Failure to Pay Overtime (29 U.S.C. § 207)
## (Against All Defendants)

72. Bernard incorporates the preceding paragraphs as though fully set forth herein.

73. The FLSA requires an employer to pay an employee one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek.

74. In one or more given workweeks, including as alleged, *supra*, Bernard worked in excess of forty (40) hours and was not compensated for the excess hours at one and one-half times his regular rate.

75. Because Defendants failed to maintain accurate records of Bernard's hours, Bernard may prove the amount and extent of his uncompensated work as a matter of just and reasonable inference, whereupon the burden shifts to Defendants.

76. Defendants' violation was willful, extending the limitations period to three years.

77. Bernard is entitled to recover his unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT III**
**Pennsylvania Minimum Wage Act (43 P.S. § 333.101 et seq.)**
**(Against All Defendants)**

78. Bernard incorporates the preceding paragraphs as though fully set forth herein.

79. At all relevant times, Bernard was an "employee" and Defendants were "employer[s]" within the meaning of the PMWA, which defines "employer" to include "any individual …or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employee."

80. The PMWA requires an employer to pay each employee at least the minimum wage for all hours worked, and ties the Pennsylvania minimum wage to the federal minimum wage.

81. The PMWA further requires an employer to pay overtime of not less than one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek.

82. Defendants failed to pay Bernard the minimum $684 weekly salary required for the executive, administrative and/or professional exemptions to the PMWA's overtime requirement.

83. Bernard was, therefore, not an exempt employee under the PMWA.

84. Defendants failed to pay Bernard the minimum wage and overtime required by the PMWA.

85. Defendants also failed to satisfy their statutory recordkeeping and notice obligations under the PMWA.

86. Every employer must keep true and accurate records of the hours worked by, and wages paid to, each employee, including each employee's regular rate of pay, and must furnish each employee, with every payment of wages, a statement listing hours worked, rates paid, gross wages, deductions, and net wages.

87. Defendants furnished Bernard no such records or statements and never notified him in writing of his rate of pay.

88. Pursuant to 43 P.S. § 333.113, Bernard is entitled to recover the full amount of the wages and overtime due, less any amount actually paid, together with costs and reasonable attorneys' fees; any agreement to work for less than the minimum wage is no defense.

**COUNT IV**
**Pennsylvania Wage Payment and Collection Law (43 P.S. § 260.1 et seq.)**
**(Against All Defendants)**

89. Bernard incorporates the preceding paragraphs as though fully set forth herein.

90. The WPCL provides employees a statutory remedy to recover wages and compensation that are contractually due to them under the terms of an agreement.

91. Defendants agreed to pay Bernard compensation at a rate of twenty five thousand dollars ($25,000) per quarter.

92. An oral or implied agreement is sufficient to support a WPCL claim, and an employee's at-will status is irrelevant to whether an enforceable agreement to provide compensation exists.

93. The compensation Defendants agreed to pay constitutes "wages" under the WPCL, which defines "wages" to include "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation," as well as any other amount to be paid pursuant to an agreement.

94. The WPCL defines "wages" to include reimbursement for expenses.

95. Defendants failed to pay Bernard the wages and expense reimbursement they agreed to pay him.

96. Defendants owe Bernard not less than $430,000 in unpaid compensation, in addition to $75,000 in unreimbursed business expenses.

97. Mastrogiovanni is an "employer" under the WPCL, which expressly includes "any agent or officer" of a corporation.

98. As the President of HVS who exercised a policy-making function and an active role in the decision whether to pay Bernard, Mastrogiovanni is individually liable.

99. Under Pennsylvania law, a corporation's top officers may be held personally liable for the corporation's failure to pay wages that it owes.

100. Because Defendants withheld Bernard's wages for more than thirty days beyond the applicable payday, and no good-faith dispute justifies the non-payment, Bernard is entitled to liquidated damages equal to twenty-five percent (25%) of the wages due, or $500, whichever is greater, pursuant to 43 P.S. § 260.10.

101. Defendants bear the burden of proving any claimed good faith.

102. Bernard is further entitled to a mandatory award of reasonable attorneys' fees and costs pursuant to 43 P.S. § 260.9a(f).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff George Bernard respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and grant the following relief:

A. On Count I, an award of unpaid minimum wages and an additional equal amount as liquidated damages under the FLSA, in amounts to be determined at trial;

B. On Count II, an award of unpaid overtime compensation and an additional equal amount as liquidated damages under the FLSA, in amounts to be determined at trial;

C. On Count III, an award of unpaid minimum wages and overtime compensation under the PMWA, in amounts to be determined at trial;

D. On Count IV, an award of all unpaid contractually-agreed wages under the WPCL, together with liquidated damages of twenty-five percent (25%) or $500, whichever is greater, in amounts to be determined at trial;

E. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), 43 P.S. § 333.113, and 43 P.S. § 260.9a(f);

F. Pre-judgment and post-judgment interest as permitted by law; and

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: September 24, 2026

Respectfully submitted,

GORDON & REES LLP

/s/*Craig W. Snethen*

Craig W. Snethen
Pa. I.D. No. 86050
Mark J. Golen, II
Pa. I.D. No. 91234
75 Hopper Place, Suite 301
Pittsburgh, PA 15222
(412) 577-7400
(412) 347-5461 *facsimile*

**csnethen@grsm.com**
**mgolen@grsm.com**

Counsel for Plaintiff