**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEORGE BERNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:26-CV-02107-NBF |
| v. | ) | |
| | ) | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| HEALTH VIEW SERVICES, INC. and RON MASTROGIOVANNI, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

George Bernard ran Defendants' business for nearly a decade, working roughly fifty hours a week, while Defendants Health View Services, Inc. ("HVS") and its president, Ron Mastrogiovanni, controlled his pay, his accounts, his personnel, and the disbursement of every dollar, yet paid him nothing. Compl. ¶¶ 16, 32–35, 51–52. Defendants do not challenge the Complaint's wage claim allegations. Instead, Defendants improperly ask this Court to decide, based only on the pleadings, (1) whether Bernard, despite working for and under the control of Defendants, deserves nothing for his labor because he is not an "employee" and (2) whether Bernard's claims expired in 2020, despite going unpaid through September 2026.

Both arguments fail for independent reasons. First, Defendants' motion applies the wrong test. Defendants mischaracterize this action as a "perversion of wage laws," Defs.' Mem. at 1, and incorrectly hinge their motion on *Clackamas* and *Mariotti's* definitional test for "employee." These cases involve Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, violations of which the Complaint does not allege, that construe "employee" according to the common-law agency definition and test. The Complaint's first three actions under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") do not apply that

definition or test and instead apply the economic-reality test, which weighs control and dependence, not ownership interest or title. *See Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142 (3d Cir. 2020); *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382–83 (3d Cir. 1985). Regardless, either test is fact-dependent and naturally involves genuine issues of material fact, which mandate denial of Defendants' motion.

Further, the Complaint's fourth count under the Pennsylvania Wage Payment and Collection Law ("WPCL") has no test. Rather, it provides "statutory remedy when the employer breaches a **contractual obligation** to pay earned wages," notwithstanding ownership dynamics. *Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P.*, 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) (emphasis added);[1] *Hirsch v. EPL Techs., Inc.*, 2006 PA Super 293, ¶ 13, 910 A.2d 84, 89 (Pa. Super. 2006) ("We begin by noting that persons considered employers under the WPCL have been permitted to use the Act to hold their similarly situated fellow employers liable for unpaid wages. Thus a person's status as an employer does not automatically prevent relief under the WPCL."). At minimum, this claim survives Defendants' motion.

Second, Defendants wrongfully suggest Bernard's action accrued in 2017, but binding authority holding each unpaid payday is a separately accruing violation forecloses this argument. *See Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019) ("Stone's last two paydays were March 8 and 15, 2013. For summary judgment purposes, those two paydays, providing a basis for separate causes of action, each initiated a three-year statute of limitations … ."). Additionally, Defendants' motion attaches two agreements – the Acquisition Agreement and Non-Disclosure Non-Compete Agreement – upon which the Complaint is not based and should, therefore, be

---

[1] The Court adds: "Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL," emphasizing claims under the WPCL flow from contract, not ownership. *Id.* (internal citations omitted).

excluded from the Court's determination on a Rule 12(b)(6) motion. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").[2] Defendants attempt to include those ultimately reinforces the existence of genuine issues of material fact which demand denial in its entirety.

Notably, Defendants' motion does not include a certificate affirming the parties conferred regarding potential amendment to the Complaint, though the motion was filed about four days before the Court's Order.[3] *See* Court Order, ECF No. 13. In the same spirit of amendment, if the Court determines deficiencies within the Complaint, Plaintiff respectfully requests leave to amend.

**COUNTERSTATEMENT OF FACTS**

HVS acquired Healthview Asset Management, Inc. ("HVAM") in 2017. HVAM thereafter operated as a wholly owned subsidiary that HVS owned and controlled in full, whose affairs HVS directed. Compl. ¶¶ 9, 15. From 2017 until his resignation in 2026, Bernard personally ran HVAM's day-to-day operations under HVS's ownership and control. Compl. ¶ 16. He held officer titles at HVAM and a directorship at HVS, and regulatory filings listed HVAM as his "current employer." Compl. ¶¶ 17–18.

Bernard performed his duties subject to Defendants' control and consistent with the functions of an employee dependent on its employer. Compl. ¶ 22. HVS set, approved, and controlled the compensation of HVAM personnel, "including determining whether, when, and in

---

2 The Complaint's fourth count under the WPCL alleges twenty-five thousand dollars owed per quarter but proactively mentions "[a]n oral or implied agreement is sufficient to support a WPCL claim" as this agreement "never reduced Bernard's rate of pay to writing." Compl. ¶¶ 44, 92. The motion's inclusion of these two agreements, the Non-Disclosure Non-Compete Agreement and Acquisition Agreement, should be excluded from the Court's review as they do not promise or relate to compensation and are not what count four, or the other wage claims, are based on.

3 Plaintiff acknowledges that counsel for Defendant did contact him to confer in regard to its motion. However, no certificate was attached as required by the Court's order and standing order on motion practice.

what amounts they would be paid." Compl. ¶ 32. HVS supervised and directed the day-to-day operation of HVAM. Bernard performed his duties subject to HVS's direction and control, and HVS required its own approval for routine operational and financial decisions concerning HVAM, including the disbursement of funds from HVAM's bank accounts, as alleged above. Compl. ¶ 33. HVS controlled HVAM's books, bank accounts, and payroll and wage records. HVS's Chief Financial Officer, Sandy O'Donnell, received, recorded and maintained the records of wages paid and expenses incurred in the operation of HVAM. Compl. ¶¶ 34. HVS possessed and exercised the authority to hire and fire HVAM personnel and used it against Bernard, purporting by email on September 4, 2026 to strip him of all authority and install a replacement. Compl. ¶¶ 31, 41. Mastrogiovanni personally controlled whether Bernard would be paid. In fact, when Bernard sought to withdraw $25,000 from the HVAM account, Mastrogiovanni advised that HVS would convene a board meeting to address the request, and he vetoed Bernard's expense-reimbursement requests outright. Compl. ¶¶ 28, 48.

Defendants agreed to pay Bernard $25,000 per quarter and to reimburse his business expenses but never reduced his rate of pay to writing and never paid him. Compl. ¶¶ 43–45. They never issued him a Form W-2, a Form 1099, or any pay statement, even as HVAM issued W-2s to other personnel, including Bernard's own spouse. Compl. ¶¶ 39–40. As Bernard alleges, "[n]otwithstanding any ownership interest Bernard may have held, under the economic reality of the relationship, Bernard was Defendants' employee." Compl. ¶ 37. He worked unpaid "in each full workweek during the limitations period," approximately fifty hours per week, through his September 4, 2026 resignation, and filed suit on September 24, 2026. Compl. ¶¶ 51–52. Defendants owe him not less than $430,000 in unpaid compensation and $75,000 in unreimbursed expenses. Compl. ¶¶ 49, 96.

## LEGAL STANDARD

On a Rule 12(b)(6) motion the Court accepts the Complaint's factual allegations as true, draws all reasonable inferences in the plaintiff's favor, and asks not whether the plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 308 (3d Cir. 2023). Two corollaries govern this motion. A limitations defense may be resolved on the pleadings "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations … [i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal." *Schmidt v. Skolas*, 770 F.3d 241, 248–49 (3d Cir. 2014). And in deciding the motion the Court may consider only the Complaint, documents on which its claims are based, and matters of public record, not extrinsic materials a defendant attaches to contradict the pleading, as mentioned above. *Pension Benefit*, 998 F.2d at 1196–97.

## ARGUMENT

### I. BERNARD PLAUSIBLY ALLEGES HE WAS DEFENDANTS' EMPLOYEE AND IS PROPERLY OWED WAGES.

#### A. THE FLSA AND PMWA APPLY THE ECONOMIC-REALITY TEST, NOT THE COMMON LAW AGENCY TEST APPLIED IN DEFENDANTS' ANTI-DISCRIMINATION CASES.

The test for status as an "employee" applicable to the FLSA and PMWA differs materially from that used to determine "employee" status under Title VII and the ADA. That is because the statutes define "employee" differently. Title VII's definition is circular: "an individual employed by an employer." 42 U.S.C.A. § 2000e. Because that definition "is completely circular and explains nothing," courts incorporate "traditional agency law criteria for identifying master-servant relationships." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–324, 112 S. Ct. 1344, 1348–1349 (1992). Where Congress uses "employee" without a helpful definition, courts

infer it meant "the conventional master-servant relationship as understood by common-law agency doctrine." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–741, 109 S. Ct. 2166, 2172–2173 (1989). The principal guidepost of the common law agency test is the hiring party's right to control the manner and means of the work, weighed against factors like skill, tools, duration, method of payment, benefits, and tax treatment, with no single factor decisive. *Darden*, 503 U.S. at 323-324, 112 S. Ct. at1348-1349.

The FLSA also defines "employee" as "any individual employed by an employer," but it goes further and separately defines the verb "employ" to "includes to suffer or permit to work." 29 U.S.C.A. § 203(e), (g). That added clause is the textual source of the FLSA's broad coverage, such that employment status turns on "the circumstances of the whole activity" rather than agency labels. That drives the economic reality test, which asks whether the worker is economically dependent on the business or is "in business for herself," weighing control, opportunity for profit/loss, investment, skill, permanence, and how integral the work is to the business. *See, e.g.*, *Hanson v. Trop, Inc.*, 167 F. Supp. 3d 1324, 1327–1328 (N.D. Ga. 2016). Control is just one factor here, measured for what it shows about economic dependence and "common law principles of employment have no bearing" on the analysis. *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1294 (11th Cir. 2016).

Ultimately, the FLSA test is significantly broader and more inclusive. The Supreme Court has observed that the FLSA's "suffer or permit to work" definition has a "striking breadth" that "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles," and the "textual asymmetry" with circularly-defined statutes bars importing FLSA cases into the agency analysis. *Darden*, 503 U.S. at 325-326, 112 S. Ct. at 1349-1350. The FLSA standard has been called "the broadest definition

[of employee] that has ever been included in one act," broader than both the NLRA and the Restatement of Agency. *Hanson*, 167 F. Supp. 3d at 1333. Its remedial purpose also tilts close cases toward coverage. *Hanson*, 167 F. Supp. 3d at 1328. Simply put, a worker who is an owner or an independent contractor under Title VII's agency test may still be an "employee" under the FLSA, because economic dependence can exist even without control over the manner and means of the work. Here, there can be no credible dispute that Bernard was economically dependent on HVS. Indeed, HVS has sued Bernard in Massachusetts seeking to enforce an alleged noncompete to prevent Bernard from earning a livelihood as an investment advisor, his chosen profession, for an additional three years.[4]

### B. DEFENDANT IMPROPERLY ATTEMPTS TO APPLY THE COMMON LAW AGENCY TEST TO BERNARD'S CLAIMS UNDER THE FLSA AND PMWA CLAIMS.

Defendants' motion fails because it improperly attempts to apply the common law agency test utilized in *Clackamas* and *Mariotti*, both of which involved claims arising under Title VII and the ADA, to this case, which indisputably arises under, *inter alia*, the FLSA and PMWA. Defs.' Mem. at 5-8. That application is impermissible because, as noted above, those cases construe a different statutory definition for a different purpose.

*Clackamas* and *Mariotti* are anti-discrimination cases. They adopt the "conventional master-servant relationship as understood by common-law agency doctrine," in which "the common-law element of control is the principal guidepost," precisely because the "employee" definitions in the ADA and Title VII are circular, without particular definition, and must be filled

---

[4] *Healthview Services, Inc v. Bernard,* No. 1:26-cv-15021 (D. Mass. Filed Nov. 9, 2026) ("MA Compl."). The Court may take judicial notice of the fact and contents of HVS's Massachusetts action, particularly its filing and allegations, without accepting the truth of the allegations asserted therein. Fed. R. Evid. 201. Plaintiff does not cite these allegations for the truth; rather, Plaintiff cites these as HVS's own statements which establish the employee status dispute presents issues unsuited for resolution on the pleadings. They are not offered to establish any fact, which would be improper at this juncture.

in by the common law. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003). *Mariotti* extended *Clackamas* to Title VII because "Title VII's definition of employee is the same as the ADA's definition." *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 766 (3d Cir. 2013). And *Clackamas* itself cautioned that its control factors "are not directly applicable" where, as here, the court is "not faced with drawing a line between independent contractors and employees." *Clackamas*, 538 U.S. at 450. The Complaint's actions are not brought pursuant to anti-discrimination laws, and no party is suggesting Bernard was an independent contractor, neutralizing these cases' applicability entirely.

The FLSA is different, as is the PMWA that closely tracks it. The Court of Appeals for the Third Circuit determines **employee status** under the FLSA through the six economic-reality factors of *DialAmerica* because Congress gave the Act "the 'broadest definition of "employee"' in the law and the ultimate question is whether, "as a matter of economic reality," the worker is "dependent upon the business to which they render service." *DialAmerica*, 757 F.2d at 1382–83.[5] Those factors turn on control and dependence, including the employer's right to control the work, the worker's opportunity for profit or loss, investment, skill, permanence, and whether the work is integral to the business, not on a worker's title. *Razak*, 951 F.3d at 142, 144-48 (affirming Courts

---

[5] "This test lists six specific factors for determining whether a worker is an 'employee':

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business."

*Id.* The Court further instructs that "neither the presence nor absence of any particular factor is dispositive and that courts should examine the circumstances of the whole activity… [courts] should consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id.* (internal citations omitted). The factors are evidentiary, the question is economic reality, and the ultimate inquiry is dependence on the business.

should "utilize[] the test outlined in *Donovan v. DialAmerica* … to determine employee status under the FLSA" and applying it to both the FLSA and PMWA claims together).[6] Importantly, "dependence" does not mean financial need. Rather, it "examines whether the worker[] [is] dependent on a particular business or organization for [his] continued employment." *Id.* at 1385. Defendants' reliance on a common-law test built to mark the boundary of the anti-discrimination statutes asks the Court to decide a wage claim under the wrong body of law. The governing test is economic reality, not common-law agency definition and test.

### 1. OWNERSHIP, OFFICER, AND DIRECTOR STATUS DO NOT FORECLOSE EMPLOYEE STATUS.

Defendants' core premise alleging "as a shareholder, director and officer," Bernard "owns and manages the enterprise and is not eligible to bring a claim as an employee," Defs.' Mem. at 5, is wrong as a matter of law. The Supreme Court held more than sixty years ago that an ownership interest does not displace employee status under the FLSA, stating that "[t]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship," and shareholders do not "cease to be employees" because the enterprise "suffer[s] or permit[s]" them to work. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32 (1961).

Though Defendants, in continuation of their misappropriation of case law, may note that the economic reality test was first employed in the context of determining employee versus independent contractor relationships, such distinction is irrelevant. The touchstone these factors serve, control and dependence, governs the owner question too, which is precisely why the Supreme Court applied the economic-reality principle to owners in *Goldberg* and why courts in

[6] "Although Plaintiffs' case includes claims under the PMWA, Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA." *Id.* at 142. Count III arises under the PMWA, which defines "employe" in parallel terms to the FLSA, leading Pennsylvania courts to construe "employee" in accord with both the FLSA and PMWA. *Id.; See* 29 U.S.C. § 203, 43 Pa. Stat. Ann. § 333.103 (demonstrating the statutes' definitions are nearly identical).

this Circuit apply it to owner-officers. In *Kehler v. Albert Anderson, Inc.*, a shareholder and officer of a corporation adequately pleaded FLSA employee status and survived a Rule 12(b)(6) motion. The court applied the *DialAmerica* economic-reality test, holding that "co-owner and employee" roles "are not mutually exclusive," and refused to "merely rely on Defendants' characterization of Plaintiff's role." *Kehler v. Albert Anderson, Inc.*, No. 16-5318 (JBS/KMW), 2017 WL 1399628, at *5–*7 (D.N.J. Apr. 18, 2017). "[M]anagement duties and sweat equity," the court held, "do not preclude" a person from being an employee. *Id.* at *7.

Defendants emphasize that Bernard held officer titles, sat on the HVS board, and received stock in the 2017 transaction. Even under Defendants' own authority, those facts do not carry a Rule 12(b)(6) motion. Title "should not necessarily be used to determine whether [a person] is an employee or a proprietor." *Clackamas*, 538 U.S. at 450. Rather, the Complaint sufficiently alleges dependence and control. Specifically, the Complaint asserts that HVS set and controlled his compensation and "determin[ed] whether, when, and in what amounts" he would be paid, Compl. ¶ 32, controlled HVAM's accounts, books, and payroll, Compl. ¶ 34, and exercised the power to hire and fire and used it to remove Bernard himself, Compl. ¶¶ 31, 41. The stripping of Bernard's authority and the designation of his replacement is itself evidence of the employer's right to control Bernard's employment and is evidence of Bernard's dependence "on a particular business or organization for [his] continued employment." *DialAmerica*, 757 F.2d at 1385. *See also Kehler*, 2017 WL 1399628, at *6 ("The fact that Mr. Anderson was able to fire Plaintiff despite [Plaintiff's] supposed 49% equity is evidence of [Mr. Anderson's] right to control, indicating an employer-employee relationship.").[7] At the pleading stage, this inference runs in Bernard's favor, meriting denial of Defendants' motion. *Hickey*, 81 F.4th at 308.

---

[7] By contrast, in this case, Bernard owns only 5% of HVS, again demonstrating that Bernard was economically dependent on his continued relationship with HVS and HVAM.

Defendants' lead case proves the point by contrast. The *Mariotti* plaintiff was a shareholder, director, and officer of a closely held family business whose "status … gave him both substantial authority … and the right to control the enterprise," and whose termination letter expressly continued his distributions, evidencing the plaintiff was not an employee. *Mariotti*, 714 F.3d at 769. Bernard pleads none of that. Rather, he pleads that he was paid nothing, controlled nothing about his own compensation, and was removed at HVS's will. Compl. ¶¶ 31–35, 50. The Complaint properly and sufficiently alleges that Bernard was an employee under the FLSA and PMWA, and the above economic reality test determines **employee status**, notwithstanding ownership status.

### 2. EMPLOYEE STATUS IS A FACT-INTENSIVE QUESTION UNRESOLVABLE ON THE PLEADINGS.

Whichever test the Court determines to apply, the application of either test demonstrates the determination cannot be made on a motion to dismiss. Under the economic-reality test, "the question of which *DialAmerica* factors favor employee status is a question of fact that should go to a fact-finder" whenever the facts are genuinely disputed, the ground on which the Third Circuit vacated summary judgment in *Razak*. *Razak*, 951 F.3d at 144–45. Incredibly, Defendants' own authority forecloses resolution here. The *Clackamas* inquiry, which applied the common-law agency test, "is a fact intensive one; therefore, cases requiring application of the test may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage." *Mariotti*, 714 F.3d at n. 5.[8] The *Mariotti* court cautioned that even affirming a dismissal on "clear facts" did not "indicate that the motion to dismiss stage will usually be the appropriate juncture for application of the test." *Id*. Here, there can be no rational dispute that, at the very least, material

[8] Notably, counsel for Defendants was counsel of record for the employer in *Mariotti* and, as such, should be more than familiar with the limits of the reach of the court's ruling in that case.

questions of fact exist as to the nature of Bernard's employment relationship with Defendants. Discovery on this fact-intensive determination as to Bernard's economic dependence on HVS will serve to properly place this issue at summary judgment, not a motion to dismiss.

This factual dispute is not hypothetical. As noted, after moving to dismiss, HVS filed its own complaint against Bernard in the District of Massachusetts. Its allegations directly contradict the premise of its present motion. HVS now alleges Defendant Mastrogiovanni, its Chief Executive Officer, "served as Chairman of HVAM's Board of Directors and of its Investment Committee," and any disposition of HVAM "would require a formal vote of HVS's Board." MA Compl. ¶¶ 23, 34. Those are HVS's own characterizations of control of the enterprise, which cannot be reconciled with its argument here alleging Bernard "had no one higher to report to."[9] Defs.' Mem. At 6. The Court need not resolve the conflict; its existence is the point. Where the parties' own pleadings describe the employment and control relationship in materially different terms, the economic-reality test is especially one of fact that cannot be decided on the pleadings. *Mariotti*, 714 F.3d at n. 5. Further, the very existence of the Massachusetts action, in which HVS attempts to foreclose Bernard's ability to earn a livelihood in his chosen profession, amply demonstrates that HVS intended that Bernard be completely economically dependent on his relationship with HVS. In reality, HVS wants the best of both worlds, disingenuously arguing in this action that he is not entitled to compensation for the services he rendered to HVS, while at the same time espousing the position in the Massachusetts action that he should not be able to earn a living elsewhere.

---

[9] This statement is directly contradicted by the complaint filed in the Massachusetts action, wherein HVS alleges that "HVS's Chief Executive Officer, Mastrogiovanni, served as Chairman of HVAM's Board of Directors and of its Investment Committee." HVS cannot credibly take contradictory positions in these actions. Although the Court need not accept the averments pleaded in the Massachusetts action, the mere fact that HVS has made such averments underscores Bernard's position here that material questions remain relative to his economic dependence on HVS and HVAM.

### 3. EACH OF THE SIX *DIALAMERICA* FACTORS, APPLIED TO THE ALLEGATIONS, CONFIRMS BERNARD'S EMPLOYEE STATUS OR, AT MINIMUM, RAISES DISPUTED FACTS.

Applying the six economic-reality factors the Third Circuit adopted in *DialAmerica* to the allegations of the Complaint confirms that Bernard has plausibly pleaded employee status. The factors are evidentiary and "neither the presence nor absence of any particular factor is dispositive," and the Court "examine[s] the circumstances of the whole activity" to decide whether, "as a matter of economic reality," Bernard was "dependent upon the business to which [he] render[ed] service." *DialAmerica*, at 1382–1383. On the pleadings, each factor either favors Bernard or presents a question of fact that cannot be resolved on a Rule 12(b)(6) motion.

#### i. THE ALLEGED EMPLOYER'S RIGHT TO CONTROL THE MANNER IN WHICH THE WORK IS PERFORMED.

The first factor – "the degree of the alleged employer's right to control the manner in which the work is to be performed" – weighs decisively in Bernard's favor. The Complaint alleges that HVS "set, approved and controlled the compensation, rates and methods of payment, and other conditions of employment" of HVAM personnel, "including determining whether, when, and in what amounts they would be paid." Compl. ¶ 32. Further, HVS "supervised and directed the day-to-day operation of HVAM," required its own approval for routine operational and financial decisions, including disbursements from HVAM's accounts, and controlled HVAM's books, bank accounts, and payroll and wage records through HVS's own CFO. Compl. ¶¶ 33–34. Mastrogiovanni personally controlled whether Bernard would be paid, convening a board meeting over Bernard's request to withdraw $25,000 from HVAM's account, and vetoing his reimbursement requests outright. Compl. ¶¶ 28, 48. Most tellingly, HVS exercised the authority to hire and fire, using it to strip Bernard of his authority as President and install Doug Woods in

his place. Compl. ¶¶ 31, 41. The power to terminate Bernard is itself evidence of Defendants' right to control his work and of his dependence on the enterprise for his continued employment.[10]

### ii. OPPORTUNITY FOR PROFIT OR LOSS DEPENDING ON MANAGERIAL SKILL.

The second factor – the worker's "opportunity for profit or loss depending upon his managerial skill' – favors employee status. Bernard had no such opportunity. Defendants agreed to pay him a fixed $25,000 per quarter for his services, Compl. ¶¶ 43, 68, which he never received. This represented a flat rate he could neither raise through his own efforts nor adjust to share in HVAM's gains.[11] He did not set his own compensation. HVS determined "whether, when, and in what amounts" he would be paid. Compl. ¶ 32. A worker paid a fixed, employer-controlled sum regardless of the enterprise's performance bears none of the profit-or-loss exposure that marks an independent business.

### iii. INVESTMENT IN EQUIPMENT OR MATERIALS, OR EMPLOYMENT OF HELPERS.

The third factor – the worker's "investment in equipment or materials required for his task, or his employment of helpers" – does not defeat employee status. The Complaint alleges no capital investment by Bernard in the HVAM enterprise. To the extent Bernard "supervised other personnel," including Doug Woods, Compl. ¶ 21, he did so as HVAM's manager within a business

---

[10] The Massachusetts action confirms the point against HVS's own interest. There, HVS alleges that Mastrogiovanni, its CEO, "served as Chairman of HVAM's Board of Directors and of its Investment Committee," MA Compl. ¶ 23; that HVS "as sole stockholder, elected Bernard" to his offices, MA Compl. Intro.; and that any disposition of HVAM "would require a formal vote of HVS's Board," MA Compl. ¶ 34. These are HVS's own characterizations of control running *to* Bernard, not *from* him, and they cannot be squared with its motion's premise that Bernard "had no one higher to report to."

[11] Although HVS claims in the Massachusetts action that HVAM's assets more than tripled and it "became profitable" under Bernard's management, HVS, not Bernard, captured that upside. Indeed, HVS acknowledges in the Massachusetts action that HVAM remitted $25,000 per quarter *to* HVS.

HVS owned and funded, not as an entrepreneur deploying his own capital.[12] This factor, at most, is neutral and cannot carry a motion to dismiss.

**iv. WHETHER THE SERVICE REQUIRES A SPECIAL SKILL.**

The fourth factor – "whether the service rendered requires a special skill" – acknowledges that Bernard's roles as President, CEO, CIO, and Chief Compliance Officer called for specialized expertise in investment advisory and regulatory compliance. Compl. ¶ 38. But skill is not ownership, and the use of professional skill in service of another's business is a hallmark of skilled employment, not independent contracting. Because no single factor is dispositive and the inquiry is economic dependence, Bernard's expertise does not displace the control, permanence, and integration that tie him to Defendants' enterprise. Skilled professionals are routinely "employees" under the FLSA's broad definition, and Bernard's expertise was not only integral to HVAM's operations, he was the only person at HVS with the skill and experience to manage the investment advisory business HVS owned in HVAM.

**v. DEGREE OF PERMANENCE OF THE WORKING RELATIONSHIP.**

The fifth factor – "the degree of permanence of the working relationship" – strongly favors employee status here. Bernard worked for Defendants continuously from 2017 until his September 2026 resignation running HVAM's day-to-day operations on behalf of HVS and subject to its ultimate oversight. Compl. ¶¶ 16, 33-34, 37. He worked approximately fifty hours per week, in "each full workweek during the limitations period," exclusively for the HVAM enterprise. Compl. ¶¶ 51–52. A continuous, full-time, years-long relationship devoted to a single business is the

---

[12] Again, in the Massachusetts action, HVS acknowledges that it supplied the business infrastructure, "support[ing] HVAM's operations, including by providing marketing, payroll, a website, and software development and maintenance" and that "HVAM's investment programs ran on HVS's "healthcare-cost projection methodology and technology."

antithesis of the transient, project-to-project engagement such as a contractor, who transfers his services from place to place.

### vi. WHETHER THE SERVICE IS AN INTEGRAL PART OF THE ALLEGED EMPLOYER'S BUSINESS.

The sixth factor – "whether the service rendered is an integral part of the alleged employer's business" – favors employee status and is especially telling here. This factor "relates not to the percentage of total work done" but to "the nature of the work performed." Workers who "perform the primary work of the alleged employer" are more likely employees. *DialAmerica*, 757 F.2d 1385**.** Bernard "personally ran the day-to-day operations of HVAM," Compl. ¶ 16, generating "revenue that funded HVS," Compl. ¶¶ 19–20, 40, 42.[13]

Taken together, the factors show that Bernard was, "as a matter of economic reality," dependent on Defendants' business for his continued employment. It was the only entity for which he provided investment advisory services and HVS controlled his pay, accounts, and personnel and directed his actions, including directing him and ither HVAM employees to provide services to HVS. It set his compensation at a fixed rate he could not alter and supplied the enterprise's infrastructure. It employed him full-time and continuously for nearly a decade and relied on his work as the revenue-producing core of HVAM. That HVS could, and did, remove Bernard at will confirms the dependence the *DialAmerica* factors measure. His titles and equity do not change the analysis. The economic-reality inquiry looks past labels to the substance of the relationship, as should this Court.

---

[13] Bernard's work was integral by HVS's own account. In the Massachusetts action, HVS alleged that HVAM "is HVS's investment advisory arm," that HVAM earns its revenue from management fees on client assets, and that Bernard managed those client relationships, accounts, and compliance. Work that produces the enterprise's core revenue is not ancillary. It is the business itself.

At the very least, the application of these factors turns on contested facts, a point that is buttressed by HVS's own conflicting allegations in the Massachusetts action about who controlled the enterprise. Such contested facts cannot be resolved on the pleadings. As set forth above, which *DialAmerica* factors favor employee status is a fact question for the fact-finder. See Razak, 951 F.3d at 144–45. Accepting the Complaint's allegations as true and drawing all inferences in Bernard's favor, the factors confirm that Bernard has plausibly pleaded he was Defendants' employee, and Defendants' motion must be denied.

## II. BERNARD'S CLAIMS ARE TIMELY.

Limitations is an affirmative defense, available on a Rule 12(b)(6) motion only where the complaint on its face shows the claims are untimely. *Schmidt v. Skolas*, 770 F.3d 241, 248–49 (3d Cir. 2014). The Complaint pleads the opposite. Bernard alleges non-payment "in each full workweek during the limitations period," continuing through his September 4, 2026 resignation, and he sued twenty days later. Compl. ¶¶ 41, 52. A complaint alleging unpaid work squarely inside each limitations window is not untimely on its face, and Defendants, who bear the burden, cannot show otherwise.[14]

### A. BERNARD'S CLAIMS ACCRUED AS EACH PAYMENT CAME DUE, NOT ONCE IN 2017.

Defendants' entire dismissal theory rests on a single, incorrect premise, which is that Bernard's claims "accrued, if at all, in 2017… and lapsed in 2020." Defs.' Mem. At 10. That is simply not how a wage claims accrues, and the Court of Appeals for the Third Circuit has rejected that theory. An FLSA claim "is really a set of claims," and for "each payday" an employer "failed to pay" proper wages, "a new and separate cause of action for unpaid overtime wages accrued,"

[14] Defendants' own brief underscores that point, misstating even the filing date, and asserting Bernard "initiated the present action on September 24, 2016." Defs.' Mem. at 3.

accruing "at each regular payday immediately following the work period during which the services were rendered." *Stone*, 935 F.3d at 154; *Gulick v. City of Pittston*, 995 F. Supp. 2d 322, 331 (M.D. Pa. 2014) (stating "each failure to pay overtime begins a new statute of limitations period as to that particular event"). Bernard alleges Defendants failed to pay compensation due in workweek after workweek through 2026. The obligation to pay did not arise once in 2017 and expire. Rather, it recurred, and Defendants' failure to pay recurred with it. Defendants' premise that a single 2017 accrual date bars everything simply is wrong as a matter of law and would have catastrophic consequences for employees who remain unpaid or underpaid for services rendered to an employer. HVS's own allegations in its Massachusetts action confirm the parties' relationship and compensation dealings continued through 2026. HVS alleges HVAM remitted funds to HVS on a recurring quarterly basis beginning around 2022 and in as recently as July 2026 Bernard sought payment of accrued compensation from HVAM, amounting to allegations which cannot be harmonized with Defendants' theory that everything accrued and expired years earlier. MA Compl. ¶¶ 26, 32.

The length of Bernard's tenure does not render the Complaint untimely. The FLSA reaches back two years, and three for willful violations, which Bernard pleads, requiring only that the employer "knew or showed reckless disregard" of its obligations, not egregiousness. 29 U.S.C. § 255(a); *Stone*, 935 F.3d at 150; Compl. ¶ 56. The PMWA and WPCL each carry a three-year period keyed to the date each payment came due. PMWA claims, indeed, "always carry a three-year statute of limitations regardless of whether those violations are willful." *Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 79, n. 7 (E.D. Pa. 2022); 43 Pa. Stat. Ann. § 260.9a(g).

### B. DEFENDANTS' DISCRETE-EVENT CASES DO NOT APPLY.

Defendants' authorities are inapposite. *Anderson* involved a one-time 1985 wage-rate recalculation whose reduced-pay effect in later paychecks the court held a "discrete one-time event." *Anderson v. City of Bristol*, 6 F.3d 1168, 1175 (6th Cir. 1993). *Alldread* likewise turned on a single coerced waiver that was "patently a single violation" occurring outside the limitations period. *Alldread v. City of Grenada*, 988 F.2d 1425, 1431–32 (5th Cir. 1993). Both courts distinguished the very situation Bernard pleads, which is an ongoing, recurring failure to pay that is a fresh violation with each paycheck, not the lingering effect of one past act. Bernard challenges Defendants' willful failure to pay him in every workweek in the three years preceding the filing of this action.

## III. INDEPENDENT OF THE FLSA AND PMWA ANALYSIS, BERNARD'S CLAIM UNDER THE WPCL SURVIVES.

Count IV does not depend on the FLSA/PMWA employee analysis at all. The WPCL "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages," and where there is no written contract, an implied oral agreement inferred from the parties' conduct suffices. *Oxner*, 132 F. Supp. 3d at 649 (E.D. Pa. 2015). Bernard pleads an agreement to pay him $25,000 per quarter for his labor, an agreement to reimburse his expenses, and performance of such labor that Defendants knowingly accepted and never paid for. Compl. ¶¶ 43–45, 91. The statute's definition of "wages" reaches "all earnings," and "fringe benefits or wage supplements" expressly include "reimbursement for expenses" and "any other amount to be paid pursuant to an agreement," covering both the unpaid compensation and the $75,000 in expenses. 43 Pa. Stat. Ann. § 260.2a. Bernard's allegations adequately establish contract under a WPCL claim, mandating this claim's survival. *Oxner*, 132 F. Supp. 3d at 650.

Neither ownership nor title defeats this claim. A plaintiff's status as an executive officer "does not automatically prevent relief," and "title alone does not bar him from suing … under the WPCL." *Hirsch*, 910 A.2d at 89 (Pa. Super. Ct. 2006). Further, Defendant Mastrogiovanni is properly named individually. The WPCL defines "employer" to include "any agent or officer" of a corporation, 43 Pa. Stat. Ann. § 260.2a, and an officer is liable where there is "some indication that the defendant employer exercised a policy-making function in the company or an active role in the corporation's decision making process." *Ovalle v. Harris Blacktopping, Inc.*, No. 21-3591, 2021 WL 6063576, at *10 (E.D. Pa. Dec. 22, 2021); *accord Hirsch*, 910 A.2d at 89. Bernard alleges that, as president of HVS, Mastrogiovanni exercised operational control over compensation and was personally responsible for deciding whether and how Bernard would be paid, including convening a board over a withdrawal request and vetoing reimbursements himself.[15] Compl. ¶¶ 14, 28, 48. At the very least, this claim survives.

## IV. AT MINIMUM, BERNARD SHOULD BE GRANTED LEAVE TO AMEND.

If the Court determines any claim insufficiently pleaded, Plaintiff respectfully requests leave to amend. Leave should be "freely give[n]… when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Third Circuit requires that amendment "be permitted… unless it would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This Court's standing order reflects the same, directing parties to consider before motion practice whether a pleading defect "can be cured by amendment." Court Order, ECF No. 13.

---

[15] Bernard's averments are consistent with HVS's statement in the Massachusetts action wherein it alleges that "HVS's Chief Executive Officer, Mastrogiovanni, served as Chairman of HVAM's Board of Directors and of its Investment Committee."

Amendment would not be futile or inequitable if deficiency is found. The only issue the Court could conceivably find thin in the current pleading is Bernard's status as an employee, which is the central issue additional record-based allegations would cure. Bernard can plead with particularity that HVS issued W-2's to other personnel, including his spouse, confirming that Defendants maintained an employer's payroll and simply declined to pay him; that HVS's chief financial officer recorded Bernard's unpaid compensation and expenses as a debt the company owed him, an acknowledgement consistent with an unpaid employee rather than an owner siphoning profits; and that Bernard needed HVS's approval to disburse even HVAM's own funds, confirming control over the enterprise ran to him, not from him. Each is a concrete, provable fact that strengthens the economic-reality showing. Any perceived gap in the employee-status allegations is curable by amendment and cannot justify dismissal with prejudice. *See Grayson*, 293 F.3d at 108.

Bernard can further plead facts that HVS has now alleged in its retaliatory Massachusetts action, confirming control of the enterprise ran to Bernard rather than from him: Defendant Mastrogiovanni, as HVS's Chief Executive Officer, chaired both HVAM's Board of Directors and its Investment Committee; HVS "as sole stockholder[] elected Bernard" to his offices and could remove him; HVS refused Bernard's request to acquire HVAM because any disposition "would require a formal vote of HVS's Board"; and HVS itself "supported HVAM's operations, including providing marketing, payroll, a website, and software development." MA Compl. ¶¶ 23, 33-34, 26, p. 1. Each is a concrete, provable fact further establishing HVS's control and Bernard's dependence under the economic-reality test. This request addresses solely any pleading specificity concern on employee status and concedes nothing as to the limitations defense.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: November 16, 2026

Respectfully submitted,

GORDON & REES LLP

s/ *Craig W. Snethen*

Craig W. Snethen
Pa. I.D. No. 86050
Mark J. Golen, II
Pa. I.D. No. 91234
75 Hopper Place, Suite 301
Pittsburgh, PA 15222
(412) 577-7400
(412) 347-5461 *facsimile*

**csnethen@grsm.com**
**mgolen@grsm.com**

Counsel for Plaintiff